UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARY LU HOPSON,

    Plaintiff,

vs.   Case No.  3:11-cv-623-J-MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**

**I.   PROCEDURAL HISTORY**

Plaintiff filed applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security income ("SSI") on November 22, 2006, alleging a period of disability beginning April 15, 2006.  (Tr. 140-41,142-45).  The claims were denied administratively and Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") on September 23, 2008.  (Tr. 7).  On April 19, 2010, a hearing was held before the Honorable Aaron Morgan.  (Tr. 29-66).  On June 11, 2010, the ALJ issued a decision finding Plaintiff not disabled.  (Tr. 12-22).  The Appeals

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 11).

Council ("AC") denied Plaintiff's request for review. (Tr. 1-4). Having exhausted all administrative remedies, Plaintiff filed her timely Complaint on June 24, 2011 (Doc. 1), seeking judicial review of the ALJ's final decision.

## II.  NATURE OF DISABILITY CLAIM

### A.  Basis of Claimed Disability

Plaintiff claimed to be disabled since April 15, 2006, as a result of anxiety and syncope. (Tr. 71, 142).

### B.  Summary of Applicable Evidence Before ALJ Morgan

Plaintiff was 43 years of age at the time the ALJ conducted the April 19, 2010 administrative hearing. (Tr. 34). Plaintiff has a high school diploma and past relevant work experience as a corrections officer.[2] (Tr. 709, 724-25). Plaintiff asserts she became disabled on April 15, 2006 as a result of anxiety and syncope. (Tr. 71, 142).

As this appeal deals only with Plaintiff's mental impairments, the Court will limit its discussion to the medical evidence regarding such impairments.[3] In sum, Plaintiff alleges severe anxiety and panic attacks since April 2005, as a result of an attack by an inmate while Plaintiff was a corrections officer in New Jersey. (Tr. 451).

On November 29, 2005, Plaintiff began receiving treatment from John M. Rotondi, Ph.D. on a bi-weekly basis for panic attacks. (Tr. 412). On May 25, 2006, Dr.

---

[2] During the administrative hearing on April 19, 2010, Plaintiff testified she was formerly an Emergency Medical Tech, however, she has been employed as a correctional officer since 1995. The ALJ stated for the purposes of his findings, he looked at and considered only the past 15 years (1995-2010). (Tr. 36-37).

[3] Plaintiff does not disagree with the physical limitations as noted by the ALJ. (Doc. 14 at 4).

Rotondi completed a Medical Examination Form in support of Plaintiff's Application for Disability Retirement. (Tr. 396-97). Dr. Rotondi noted Plaintiff's symptoms included: severe anxiety, depression, and phobia rendering her unable to return to work. (Tr. 397). Dr. Rotondi also found Plaintiff's Posttraumatic Stress Disorder ("PTSD") had impaired her cognitive abilities and as a result, she could no longer perform the duties of a corrections officer. (Tr at 397). S.M. Nasta, M.D., Plaintiff's family practitioner, also completed a Medical Examination Form in support of Plaintiff's application for Disability Retirement. (Tr. 394-95). Dr. Nasta noted Plaintiff's symptoms of severe anxiety, depression, and phobias lead to impaired decision making and judgments. Further, Dr. Nasta observed Plaintiff was no longer able to perform the duties of a corrections officer. (Tr. 395).

On September 15, 2006, Robert T. Latimer, M.D. evaluated Plaintiff and completed a psychiatric evaluation. (Tr. 405-07). Dr. Latimer stated, that in his opinion "[Plaintiff] was not fit to discharge her duties as a Correction's Officer and probably should not be involved in any area of Law Enforcement." (Tr. 407). Dr. Latimer found Plaintiff to be " totally and permanently disabled from her job," and opined that her condition was "related to the incident she experienced on 4/18/05." (Tr. 407).

On December 5, 2006, Dr. Rotondi completed a psychiatric report regarding Plaintiff. (Tr. 412-17). Dr. Rotondi noted Plaintiff's concentration was somewhat impaired, her memory was satisfactory, and her judgment was impaired by her high level of anxiety. (Tr. 413). Dr. Rotondi further noted Plaintiff's understanding, memory, sustained concentration, and persistence were limited by anxiety and her social interaction was limited by a fear of crowds. (Tr. 415).

On March 27, 2006, at the request of Plaintiff, Dr. Rotondi provided an update on Plaintiff's condition to her counsel, which listed a diagnosis of PTSD. (Tr. 451). Dr. Rotondi noted Plaintiff's treatment consisted of biofeedback training as well as cognitive behavioral psychotherapy. (Tr. 451). Dr. Rotondi further remarked "with all her treatment to date, [Plaintiff] [had] made some progress regarding symptom reduction but her prognosis for full recovery [was] guarded." (Tr. 451-52).

On August 20, 2008, Plaintiff was interviewed and evaluated by Denise Verones, Ph.D., at the request of Disability Determination Services. During the interview, Plaintiff noted she was attacked by an inmate while working as a corrections officer in New Jersey. (Tr. 448). Plaintiff further stated she was diagnosed with anxiety in 2005 and was treated with medication, however, she had since run out of medication and had not sought treatment since moving to Florida in 2007. (Tr. 447, 450). Plaintiff further stated she slept a lot and she had alienated herself from her friends and family since the attack. (Tr. 449). In her evaluation, Dr. Verones observed Plaintiff drove herself to the interview, was appropriately dressed, and did not display any unusual behaviors. (Tr. 447). Dr. Verones also mentioned Plaintiff's affect was "appropriate to the situation;" Plaintiff's thought processes were "logical and coherent" at the time of the interview; Plaintiff understood why she was being interviewed; and was "oriented to person, place, and time." (Tr. 447-48). Dr. Verones further indicated Plaintiff was unable to recall 6 out of 6 digits forward however, Plaintiff was able to accurately count backwards from 20, she could count by 3s to 18, she was able to recall what she ate the morning of the interview, and she was able to report a recent news story of national interest. (Tr. 449). Finally, Dr. Verones asserted that there was no evidence of delusions, hallucinations, or

psychotic thinking, and Plaintiff's judgment appeared to be "fair." (Tr. 449). Dr. Verones diagnosed Plaintiff with PTSD, obesity, stress related syncope, memory loss, and assigned Plaintiff a GAF score of 45.[4] (Tr. 449). At the conclusion of her evaluation, Dr. Verones opined:

> [Plaintiff] [was] a verbal, cooperative woman who has no prior history of psychiatric problems, but was attacked by an inmate in 2005. . . . Since that incident, she has been depressed and anxious. She is suffering from [PTSD], and was treated for that while residing in New Jersey. I believe that without treatment, her condition will become worse. . . . [Plaintiff] will require long term treatment, and her prognosis for a full recovery has been determined to be guarded..I believe that at this point in time, she is incapable of managing the demands of any job.

(Tr. 450).

On September 3, 2008, Steven Wise, Psy.D., a medical consultant for Disability Determination Services, reviewed the record of evidence and completed a Mental Residual Function Capacity Assessment ("Mental RFC"). Dr. Wise concluded:

> [Plaintiff] will do best with simpler tasks which do not require contact with the public. . . . [Plaintiff] can understand and remember basic tasks. [Plaintiff] can carry out simple tasks. [Plaintiff] can maintain concentration and attention for routine, uncomplicated tasks for two-hour periods during an eight-hour work day. [Plaintiff] can complete a normal workweek without excessive interruptions from psychological based symptoms. [Plaintiff] can relate to supervisors and coworkers. [Plaintiff] can adapt to simple changes and avoid work hazards.

(Tr. 474).

---

[4] The Global Assessment of Functioning ("GAF") Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 32 (4th ed. 1994). A GAF score of 41-50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting), or serious impairment in social or occupational functioning (e.g. no friends, unable to keep a job). Id.

**C.     Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a plaintiff is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a plaintiff does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  § 404.1520(c).  Third, if a plaintiff's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a plaintiff's impairments do not prevent her from doing past relevant work, she is not disabled.  § 404.1520(e).  Fifth, if a plaintiff's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.
§ 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In this case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through December 31, 2011.  (Tr. 14).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 15, 2006.  (Tr. 14).  At step two, the ALJ found Plaintiff had the

following severe impairments: PTSD, back pain, and obesity. (Tr. 14-15). At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-16).

The ALJ further determined Plaintiff retained the RFC to perform less than the full range of light work as defined in §§ 404.1567(b) and 416.967(b). (Tr. 16-20). Specifically, the ALJ found Plaintiff was able to:

> Lift and/or carry no more than 20 pounds occasionally and 10 pounds frequently. The [Plaintiff] may stand and/or walk for 6 hours per day and sit for 6 hours per day. The [Plaintiff] should never climb ladders, ropes or scaffolds. The [Plaintiff] may never crawl and should avoid concentrated exposure to extreme cold and heat and hazards such as machinery and heights. The [Plaintiff] is limited to jobs involving simple, routine, repetitive tasks involving up to 3 step commands, with occasional interaction with the general public and coworkers.

(Tr. 16). In making this determination, the ALJ found Plaintiff's impairments could reasonably be expected to produce the alleged symptoms. (Tr. 19). However, he found Plaintiff's assertions concerning the intensity, persistence, and limiting effects of her alleged symptoms were not entirely credible to the extent they were inconsistent with the RFC assessment. (Tr. 19).

At step four, the ALJ utilized the testimony of a Vocational Expert ("VE") during the hearing to determine if Plaintiff could perform any of her past relevant work. (Tr. 20, 58). The VE explained Plaintiff could not perform any of her past work. (Tr. 60). Accordingly, the ALJ proceeded to step five and asked the VE whether Plaintiff could perform other work existing in the national economy. (Tr. 60). The VE testified Plaintiff

could perform occupations such as Office Helper, Mail Clerk, Marker, and Surveillance-System Monitor. (Tr. 60-61). Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 22).

### III.   ANALYSIS

#### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining how the court must scrutinize the entire record to determine

reasonableness of factual findings).

The district court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine the Commissioner properly applied the law. Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994).

### B. Issues on Appeal

Plaintiff raises two issues in this appeal. Plaintiff argues the ALJ erred by improperly discounting the opinion of an examining physician and instead relying on the opinion of a non-examining doctor. (Doc. 14 at 4). Additionally, Plaintiff claims the ALJ erred by not properly including the limitation of "mild difficulty" in the areas of: concentration, persistence, or pace in the hypothetical to the VE. (Doc. 14 at 8).

In response, the Commissioner argues the ALJ properly evaluated the opinions of all physicians and gave them appropriate weight. (Doc. 15 at 5). Further, the Commissioner argues the ALJ's hypothetical to the VE accurately reflected Plaintiff's limitations and Plaintiff failed to prove she could not perform the jobs cited by the VE. (Doc. 15 at 10-11).

#### i. Physicians' Opinions

Plaintiff contends the ALJ erred by giving more weight to Dr. Wise, a non-examining state agency medical psychologist, and discounting the opinions of examining physicians Dr. Latimer, a psychologist, and Dr. Rotondi, a psychiatrist. (Doc. 14 at 5-6). Specifically, Plaintiff suggests the ALJ discounted the opinions because, while both Drs. Latimer and Rotondi indicated Plaintiff could not return to her

work as a correctional officer, neither doctor indicated Plaintiff retained the ability to perform other work. (Doc. 14 at 6). Furthermore, Plaintiff argues the ALJ discounted the opinion of Dr. Verones, a psychologist who, after examining Plaintiff once, indicated Plaintiff was incapable of managing the demands of any job. (Doc. 24 at 6).

Social security regulations require an ALJ evaluating medical opinion evidence to consider a variety of factors, including: the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question. See 20 C.F.R. § 404.1527(d)(1)-(6). Generally, the opinions of treating physicians are given more weight than examining physicians, and examining physicians are given more weight than those of non-examining physicians. See § 404.1527(d)(1), (2) & (5). The opinion of an examining physician may be given less weight when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. See id. Also, state agency consultants are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if they are supported by the evidence. 20 C.F.R.§ 404.1527(f)(2); SSR 96-6p 1996 WL 374180 (S.S.A.). When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate his reasons. Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)).

In this case, the ALJ considered the opinions of multiple examining physicians as well as the opinions of non-examining physicians.[5] The ALJ noted that in making his

---

[5] It is also important to note that Plaintiff acknowledges there is no treating physician with regard to her mental impairments. (Doc. 15 at 7).

determination, he considered the opinions of Dr. Latimer, Dr. Morford[6], Dr. Nasta, Dr. Rotondi, and Dr. Wise. (Tr. 20). The ALJ elected to give the opinion of Dr. Wise, "significant weight" to the extent that it was consistent with the assessed RFC. (Tr. 20). The ALJ's decision to afford significant weight to Dr. Wise was based on substantial evidence because Dr. Wise reviewed the record of evidence as a whole and based upon that review, completed a Mental RFC. (Tr. 472-75). Moreover, Dr. Wise's determinations and assessments of Plaintiff are not refuted by the evidence of record or by the opinions of any other examining physician.

   In assessing Dr. Rotondi's and Dr. Latimer's opinion, the ALJ stated:

> [Dr. Rotondi and Dr. Latimer] have not indicated that the [plaintiff] has greater limitations than those determined in this decision. The doctors indicated that the [plaintiff] cannot return to her past work; they have not indicated that the [plaintiff] cannot perform other work. In other words, the doctors have not indicated that the [plaintiff] is unable to perform work limited to simple, routine, repetitive tasks.

(Tr. 20). Since the opinions of Drs. Rotondi and Latimer do not contradict the opinion of Dr. Wise, conflict with the medical evidence of record, or conflict with the RFC, the ALJ did not commit any error in his treatment of them.

   Also, while not specifically stated in the opinion, the ALJ afforded the appropriate amount of weight to the opinion of Dr. Nasta. In the assessment he completed, Dr. Nasta did not indicate Plaintiff was unable to perform work limited to simple, routine, repetitive tasks. As with Drs. Rotondi and Latimer, Dr. Nasta indicated only that Plaintiff

---

[6] Donald Morford M.D. was the State agency medical consultant who prepared the Physical Residual Functional Capacity Assessment of Plaintiff. (Tr. 476-83). As this appeal deals solely with the plaintiff's mental assessment, the Court will not comment on the weight the ALJ gave to Dr. Morford's opinions.

could not return as a corrections officer.  Again, since the opinion of Dr. Nasta did not contradict the opinions of Drs. Latimer, Rotondi, or Wise, conflict with the medical evidence of record, or the RFC, the ALJ properly considered and assessed it.

Finally, the ALJ's decision not to afford weight to Dr. Verone's determination of disability was not error.  First, in accordance with 20 C.F.R. § 404.1527(e)(1), the ALJ correctly noted "determinations of disability . . . are reserved to the Commissioner and are not within the competence of physicians."  See Lewis 125 F.3d at 1440 ("Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings . . . not their opinions of the legal consequences of his condition."); see also Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (holding an ALJ did not err by affording little weight to a treating physician's opinion that the plaintiff was "totally disabled" when the documented medical findings would not permit a determination of "disability" under regulation 20 C.F.R. § 404.1520(d)).  Second, the ALJ correctly stated the conclusion by Dr. Verones was inconsistent with the medical evidence in the record as a whole.  Specifically, Dr. Verones's conclusion that Plaintiff was incapable of managing the demands of any job, essentially a determination that Plaintiff was disabled, was made after only one interview with Plaintiff.  Furthermore, Dr. Verones did not state any specific reasons for the determination.  Indeed, Dr. Verones's report indicated Plaintiff exhibited appropriate affect, no evidence of delusions or obsessions, logical and coherent thought process, orientation to person, place, and time, no evidence of delusions, hallucinations or psychotic thinking, and fair insight and judgment.  (Tr.448-49).  Dr. Verones also noted Plaintiff was appropriately dressed, was not guarded or defensive, and had no unusual behaviors.  (Tr. 447).  Finally, Plaintiff

Page 12

was evaluated and treated by three other physicians who concluded Plaintiff could not return to her work as a corrections officer, or law enforcement, but no other physician stated Plaintiff could not return to any work.

For the foregoing reasons, the Court finds that the ALJ articulated adequate reasons showing good cause for discounting Dr. Verones's notation "[Plaintiff] is incapable of managing the demands of any job" and said reasons are supported by substantial evidence.  Furthermore, the ALJ appropriately articulated adequate reasons showing good cause for the weight he afforded to the opinions of Drs. Wise, Latimer, Nasta, and Rotondi.

### ii. Hypothetical posed to VE

Plaintiff also argues the ALJ erred by not properly including the limitation of "mild difficulty" in the areas of concentration, persistence, or pace in the hypothetical to the VE.  (Doc. 14 at 8).

At step five of the process of evaluating a claim of disability, the burden shifts to the Commissioner to prove the existence of other jobs in the national economy that the plaintiff can perform.  Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996).  "The ALJ must articulate specific jobs that the [plaintiff] is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture."  Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).  One way the ALJ may determine whether the plaintiff is able to perform other work is for the ALJ to ask a VE hypothetical questions "to establish whether someone with the limitations that the ALJ has previously determined that the [platintiff] has, will be able to secure employment in the national economy."  Phillips, 405 F.3d at 1240.  "In order for a [VE's] testimony to constitute

substantial evidence, the ALJ must pose a hypothetical question which comprises all of the [plaintiff]'s impairments." Winschel v. Commissioner of Social Sec., 631 F.3d 1176, 1180 (11th Cir. 2011).

In this case, the ALJ's hypothetical question adequately accounted for Plaintiff's limitation in concentration, persistence, and pace. In this proceeding, the ALJ presented the following hypothetical to the VE:

> Please assume a hypothetical individual of the [plaintiff's] age, education and vocational background. This person can lift and carry 20 pounds occasionally and ten pounds frequently and/or walk for six hours a day and sit six hours per day. In addition, this person could never- - should never climb ropes, ladders, scaffolding . . . , or crawl. This person should avoid concentrated exposure to extreme cold and heat and hazards such as machinery and heights. In addition, this person will be limited to jobs involving only occasion [sic] interaction with coworkers. . . . [L]imitation also of simple, routine repetitive tasks, involving up to three step commands.

(Tr. 59-60). By including in the hypothetical a limitation of "simple, routine repetitive tasks," the ALJ adequately accounted for restrictions related to concentration, persistence, and pace since the medical evidence demonstrated Plaintiff's ability to perform the tasks. See Jarrett v. Commissioner of Social Sec., 422 F.App'x. 869, 872 (11th Cir. 2011) (citing Winschel, 631 F.3d at 1181 ("[W]hen medical evidence demonstrates that a [plaintiff] can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.")).

Similar to Jarrett, the ALJ in this case found limitations in concentration,

persistence, and pace and in the hypothetical to the VE, the ALJ properly included those limitations when he stated the individual could perform "simple, routine, repetitive tasks." However, Plaintiff argues that the limitation in the hypothetical to the VE was deficient in light of Werner v. Astrue, Case number 3:10-CV-106-J-JBT. In Werner, the court determined the hypothetical posed to the VE was deficient because the limitation to "simple tasks" did not adequately account for Plaintiff's difficulties in concentration, persistence, or pace. Id. However, in Werner, the court reasoned the limitation to "simple tasks" might have been supported by the evidence, but since the ALJ did not "connect the evidence to the conclusion through an 'accurate and logical bridge,'" it could not be supported. Id. (citing Stewart v. Astrue 561 F.3d 679, 684 (7th Cir. 2009)).

Here, unlike in Werner, the ALJ's conclusion is supported by the medical evidence and connected through an "accurate and logical bridge." Specifically, the ALJ properly cited in his decision that Plaintiff, through her own admission, is able to follow basic instructions. (Tr. 16). Further, as the Commissioner correctly points out, the ALJ in Werner assessed the plaintiff as having "moderate limitations" in consistency, persistence and pace, and in the case at bar, the ALJ properly assessed the plaintiff as having only "mild limitations."

In the instant case, there is medical evidence from Dr. Wise and statements from Plaintiff supporting the conclusion that Plaintiff can complete simple tasks and follow simple instructions which the ALJ properly used to form an "accurate and logical bridge." Therefore, this Court finds the ALJ did not err and the hypothetical posed to the VE properly reflected all of Plaintiff's limitations.

**IV.     CONCLUSION**

For the foregoing reasons, the Commissioner's decision is hereby **AFFIRMED**. The Clerk of the court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  5th  day of April, 2012.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record